O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES H. DONELL, RECEIVER FOR NEWPOINT FINANCIAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TAHMINEH RASHIDI GHADRDAN aka TAHMINEH RASHIDI and FRUIT ATLANTIC, LLC, a California limited liability company, <br><br> Defendants. | Case No. CV 11-10517 DDP (AJWx) <br><br> **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** <br><br> [Dkt. No. 17] |

Presently before the court is a Motion for Summary Judgment brought by Plaintiff James. H. Donell, Receiver for NewPoint Financial Services Inc. ("Donell" or "the Receiver"). Having considered the parties' submissions[1] and heard oral argument, the court adopts the following order.

**I. BACKGROUND**

The following facts are not in dispute. John Farahi was the co-owner, president, secretary, and treasurer of NewPoint Financial

---

[1] The Opposition was due on February 4 but filed at 12 am on February 5.

1  Services, Inc. ("NewPoint").  (Decl. Davidson, Exh. D, Plea
2  Agreement for Defendant John Farahi ("Farahi Plea Agreement"), at
3  28.)  NewPoint, controlled by Farahi, offered and sold millions of
4  dollars of debentures to numerous investors.  (Id. at 29.)
5      Farahi generally used investor funds to make interest and
6  principal repayments to previous investors, to pay personal
7  expenses, and to finance higher-risk futures options.  (Id. at 30.)
8  In other words, Farahi was engaged in a Ponzi scheme, which is "any
9  sort of fraudulent arrangement that uses later acquired funds or
10 products to pay off previous investors."  (Decl. Grobstein ¶ 13; In
11 re Agricultural Research Technology Group, Inc., 916 F.2d 528, 531
12 (9th Cir. 1990).)  As a result of the Ponzi scheme and fraud,
13 NewPoint Entity investors lost millions of dollars.
14     In his plea agreement, Farahi admitted that the scheme began
15 "on a date unknown but at least as early as in or about November
16 2005."  (Farahi Plea Agreement at 28.) In the fall of 2008, Farahi
17 suffered approximately $30 million in losses resulting from options
18 trading.  (Id. at 30.)  Farahi continued to use investors funds to
19 pay back prior investors, among other things.  (Id.)
20      Defendant Tahmineh Rashidi Ghadrdan ("Ghadrdan") invested a
21 total of one million dollars between 2002 and 2003.  Between 2003
22 and 2005, she received payments totaling $1,134,481.10, with the
23 last payment being made on January 24, 2005. (Exh. 4.) On November
24 11, 2008, she invested $200,000 with Parsi Investments LLC, one of
25 the entities through which Farahi conducted the fraud.  (Reply Exh.
26 3.)  Between 2008 and 2009, Ghadrdan received payments totaling
27 $206,468.15, including a payment of $198,856.39 on June 4, 2009.
28 Additionally, Defendant's company Fruit Atlantic, LLC ("Fruit"),

2

also a Defendant, received payments totaling $4,590.31, although it had made no investment.  (Decl. Grobstein ¶ 16., Exh. 2.)

This court appointed Donell as Receiver of NewPoint and its affiliates and subsidiaries on January 8, 2010.

**II. LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be drawn in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex,

3

477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. DISCUSSION**

**A. Defendants' Liability**

The Ninth Circuit has adopted a two-step approach to determine how much, if anything, a receiver can recover from a "winning" but innocent investor in a Ponzi scheme. Donell v. Kowell, 533 F.3d 762, 771 (9th Cir. 2008). Step one determines the investor's liability with the "netting rule": "Amounts transferred by the Ponzi scheme perpetrator to the investor are netted against the initial amounts invested by that individual. If the net is positive, the receiver has established liability, and the court determines the actual amount of liability, which may or may not be equal to the net gain, depending on factors such as whether

4

transfers were made within the limitations period or whether the investor lacked good faith." Id. In step two, "to determine the actual amount of liability, the court permits good faith investors to retain payments up to the amount invested, and requires disgorgement of only the 'profits' paid to them by the Ponzi scheme." Id. at 772.

Both parties agree that this is the rule that should be applied, but they differ on which transfers should be considered. The Receiver argues that Ghadrdan invested a total of $1,200,000.00 and received payments on the investment totaling $1,340,949.25, with a net profit of $140,949.25. (Decl. Grobstein ¶ 17.) Donell argues that because Ghadrdan received payments from Farahi within the four-year statute of limitations period totaling more than $140,949.25, he should be able to recover the full amount.

Ghadrdan asserts that there is no evidence that Farahi was running a Ponzi scheme at the time of her initial investment in 2002-03 or at the time of Farahi's initial payments to her totaling $134,481.10 as of January 2005. Farahi pled that he began to defraud investors "[b]eginning on a date unkonwn but at least as early as in or about November 2005." (Farahi Plea Agreement at 28.) The Receiver presents no evidence an earlier date of the beginning of the scheme. Thus, she argues, the netting should cover only the payments she received after the scheme began, meaning only the $11,058.46 she received subsequent to her later investment of $200,000.

The court agrees with Ghadrdan that there is a question of fact as to when the Ponzi scheme began. It is possible that Farahi's scheme was legitimate for several years before becoming a

5

Ponzi scheme.  If that is the case, Ghadrdan may be entitled to keep the profits from her initial investment, if, for instance, both the investment and that return on the investment took place while the fund was legitimate.  Since her initial investment was $1,000,000 and by January 2-5, she had received payments totaling $1,134,481.10, she appears to have been totally divested at that point.  If the scheme did not become fraudulent until several months later, then it appears that she should be able to keep the profits from that initial investment.  This is not a question of "tracing," which involves tracing transfers and demonstrating whether the "payments that took place within the statute of limitations periods were return of principal or profit." <u>Kowell</u>, 533 F.3d at 773.  Here, the issue is whether Ghadrdan's initial investment of one million dollars was an investment into a Ponzi scheme at all, and whether the profits she had received by January 2005 were not real profits but instead capital investments of new investors.

Alternatively, it is possible that the scheme was a Ponzi scheme at an earlier date than the one admitted to by Farahi.  The Receiver may be able to present records of NewPoint transactions that indicate its fraudulent scheme had already commenced at the time of Ghadrdan's initial investment. The plea agreement is not conclusive evidence for either party in this respect, but it does create an issue of fact that makes summary judgment improper.

[There is no factual dispute regarding Ghadrdan's investment of $200,000 in 2008.  Ghadrdan does not contest the fact that she received $6,468.15 in payments in addition to the return of her investment or that her company Fruit received $4,590.31 although it

6

had not made any investment.[2] These profits are subject to the netting rule, meaning that Ghadrdan and Fruit would appear to be liable to the Receiver for $11,058.46. SHOULD THIS BE INCLUDED IF NOT AT ISSUE?]

Because Defendants have demonstrated that there are material issues of fact and law, the court DENIES the Motion for Summary Judgment.

**B. Receiver's Standing to Sue**

Defendants argue that the Receiver does not have standing to sue them. This is contradicted by explicit Ninth Circuit authority and is incorrect. See, e.g. Kowell, 533 F.3d at 777 ("The Receiver has standing to bring this suit because, although the losing investors will ultimately benefit from the asset recovery, the Receiver is in fact suing to redress injuries that Wallenbrock [the entity for which it is receiver] suffered when its managers caused Wallenbrock to commit waste and fraud.").

**IV. CONCLUSION**

For these reasons, the Motion is DENIED.
IT IS SO ORDERED.

Dated: February 26, 2013

DEAN D. PREGERSON
United States District Judge

---

[2] These payments came from Parsi Investments, LLC, which was one of the entities through which Farahi conducted the fraud. Parsi is a receivership entity. See Reply Exh. 3.

7